JANE DANSKIN, ADMINISTRATRIX, DEFENDANT IN ERROR, v. PENNSYLVANIA RAILROAD COMPANY AND NEW YORK AND LONG BRANCH RAILROAD COMPANY, PLAINTIFFS IN ERROR.

Argued June 29, 1908—Decided March 1, 1909.

The fact that at the time a railroad was located across a public highway there existed brush or woods at the crossing which might obstruct a traveler's view of an approaching train, is not of itself enough to charge the railroad company with the duty of adopting extraordinary safeguards at the crossing.

---

On error to the Supreme Court.

For the plaintiffs in error, *John S. Applegate & Son* and *Alan H. Strong.*

For the defendant in error, *Gilbert Collins.*

The opinion of the court was delivered by .

SWAYZE, J.    This is a case of collision at a railroad cross-ing.    The train which killed the decedent was operated by the Pennsylvania Railroad Company;  the railroad on which it ran was controlled by the New York and Long Branch Railroad Company.    The negligence alleged against the latter company was the failure to provide safeguards at the crossing other than the statutory signals required of its co-defendant.    The trial judge charged that there was but one question of negligence or want of care against each com-pany—against the Pennsylvania, the alleged failure to ring a bell; against the New York and Long Branch, the alleged failure to provide safeguards other than the signals· on the locomotive, by reason of conditions existing at the time it laid its tracks there.    These conditions were said to be the existence at the time of the location of the railroad of a brush or woods tract, which remained substantially the same until the time of the accident.    The defendants excepted to so much of the charge as permitted the jury to find a verdict against the New York and· Long Branch Railroad upon the theory of· being obliged to adopt extraordinary precautions beyond the statutory signal.    Thereupon the jury were re-called and told that the liability to give other protection only arose when the railroad company had either by locating its line in a dangerous place or by its own act created dangers which made the place of crossing especially dangerous.    There-upon the defendants excepted to so much of the charge as permitted the jury to find the company liable if it did not adopt extra precautions.    There was no evidence of special danger except that caused by the brush or woods.

The charge in effect permitted, if indeed it did not require, the jury to find the Long Branch railroad liable for its failure to adopt extra·precautions merely because the brush or woods existed when it located its road.    If the charge required such a finding, it was clearly injurious because it laid down as a proposition of law what should have been left to the jury, as was done in *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531; *New York, Lake Erie and Western Railroad Co.* v. *Ran-*

*dal,* 18 *Id.* 144, and in *Hires* v. *Atlantic City Railroad Co.,* 37 *Id.* 30. If, however, the charge only permitted the jury to find that the duty to adopt extra precautions arose from the existence of the brush or woods at the time of the location of the railroad it was equally injurious, for it predicated the existence of the duty upon the existence at a remote time of a single circumstance, which may or may not have been of importance at the time of the accident. The rule laid down in the Matthews case under the facts of that case was that if the place was "so peculiarly dangerous that prudent persons could not use the public road in safety unless the company employed a flagman or other extraordinary means to signal the approach of their trains, that then, in such event, it was incumbent on them to employ such extraordinary means." There is nothing in the mere fact of the existence of brush or woods that renders a crossing so peculiarly dangerous that prudent persons cannot use the public road in safety. In fact it is probable that such obstructions to the vision occur most frequently in the remoter districts, where trains are infrequent and travelers are few, and we doubt if it has ever been held that it was permissible for a jury to infer the existence of a duty to employ extraordinary precautions upon unfrequented roads merely because of the existence of woods at the point of crossing. *Beisiegel* v. *New York Central Railroad Co.,* 40 *N. Y.* 9, cited by Chief Justice Beasley in his opinion, held that it could not be left to a jury to find from the mere fact that a street is in a populous town and much used, that it is incumbent upon the railway company to station a flagman at such point. It is unnecessary for us to go as far as that. It is enough to point out that the single circumstance relied upon by the learned trial judge to establish the duty does not of itself suffice.

As the case must be tried again it may be well to point out that in another respect the charge was too favorable to the railroad company. It limited the company's liability to the case where the condition existed at the time the tracks were laid. The authorities do not so limit it. The Matthews case holds that the extraordinary duty exists in cases where the

company has created the extra danger, and that was all that was necessary for the decision of that case; but the same judge had shortly before held that the duty of a railroad company to construct a bridge or passageway was a continuing duty to be measured by circumstances, and that a bridge which at one time would be adequate might become totally inadequate, and consequently a provision which at one juncture would be a discharge of the duty would, at another, amount to its infraction. *Central Railroad Co.* v. *State,* 3 *Vroom* 220, 224. So in a case like the present extraordinary precautions might be quite unnecessary when the road was originally located, but might become necessary with the increase of traffic, and if the conditions which caused the extraordinary danger were created by or within the control of the company, the duty to adopt the additional safeguards would arise. In a doubtful case this might have to be submitted to the jury, as was done in the cases above cited, but, as Chief Justice Beasley said, it would obviously be very much under the control of the court, and would not be left to the caprice of juries; he did not say that it would never be for the jury to determine whether or not the facts were such as to bring the case within the legal rule that the railroad company must adopt extraordinary precautions where the situation, through conditions created by it or within its control, becomes such that prudent persons could not otherwise use the public road in safety.

The case of *New York, Lake Erie and Western Railroad Co.* v. *Leaman,* 25 *Vroom* 202, is not to the contrary. We were careful to say that that case did not involve any question of gates or flagmen, and that there was nothing in the particular circumstances that would permit that question to be left to the jury. The question there was whether the statutory duty to give audible signals was to be supplemented by additional and varying duties by reason of meteorological considerations —the direction of the wind, the cloudy or clear condition of the atmosphere, the presence of rain or fog.

We are clear that there was error in the charge injurious to the Long Branch road. The exception called attention to

it, and covered so much of the charge (and no more) as permitted the jury to find a verdict upon the theory of a duty to adopt extraordinary precautions. For this error the judgment as to that road must be reversed. The judgment is joint and must be reversed as to both defendants. *McDonald* v. *Central Railroad Co.,* 43 *Vroom* 280.

*For affirmance*—THE CHANCELLOR, MINTURN, BOGERT, J.J.   3.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, VREDENBURGH, VROOM, GRAY, DILL, J.J.   12.