26 N.J. Super. 208 (1953)
97 A.2d 684
LE ROY DOUGLAS, PLAINTIFF-APPELLANT,
v.
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1953.
Decided June 12, 1953.
*209 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Robert J. Novins argued the cause for appellant (Messrs. Novins & Novins, attorneys; Mr. Robert F. Novins and Mr. Julius Braun, on the brief).
Mr. Robert A. Lederer argued the cause for respondent (Mr. William F. Hanlon, attorney).
*210 The opinion of the court was delivered by JAYNE, J.A.D.
At about midnight on March 15, 1951 the plaintiff, while operating his motor vehicle at a moderate speed in a westerly direction on Meadow Avenue in Lakewood, came into collision with a gondola freight car of the defendant which had been permitted temporarily to occupy the unlighted and unguarded railroad crossing. The plaintiff prosecuted this action to recover from the defendant compensatory damages for the bodily injuries and incidental losses which he sustained in the mishap. At the conclusion of the introduction of the plaintiff's evidence relating to the issue of the defendant's liability, the court upon motion granted a judgment of involuntary dismissal of the plaintiff's alleged cause of action.
True, the case was one where upon a motion for dismissal the trial judge was obliged to accept as true all evidence which supported the view of the party against whom the motion was made and required to accord him the benefit of all inferences which might logically and legitimately be drawn therefrom, and additionally to recognize that the existence of negligence and contributory negligence are preeminently questions of fact for the jury. Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951).
Where there is no proof of actionable negligence for which the defendant can be lawfully held responsible, the question of the existence of contributory negligence is immaterial. Freschi v. Mason, 108 N.J.L. 272 (E. & A. 1931); Cohen v. Borough of Bradley Beach, 135 N.J.L. 276 (E. & A. 1947).
However, in the present case it was concluded that there was an absence of prima facie proof of the defendant's negligence, and it was also resolved that the plaintiff was as a matter of law guilty of contributory negligence.
The propriety of the dismissal on the ground that the plaintiff had failed to establish to a prima facie degree the alleged negligence of the defendant presents a more argumentative subject, the essence of which in the present case *211 implicates, with the other accompanying conditions and circumstances, the nature of the construction of the railroad crossing by the defendant and the use made of it by the defendant at the time of the accident.
It is an acknowledged principle of law that where a railroad company by its own acts has caused a crossing to be abnormally hazardous to travellers on the public highway, it is under the duty to use extra precautions commensurate with the unusual risk thus created. The following decisions are informative: Pennsylvania R.R. Co. v. Matthews, 36 N.J.L. 531 (E. & A. 1873); Del., Lack. & W.R.R. Co. v. East Orange, 41 N.J.L. 127, 134 (Sup. Ct. 1879); New York, L.E. & W.R.R. Co. v. Randel, 47 N.J.L. 144 (E. & A. 1885); Consolidated Traction Co. v. Chenowith, 61 N.J.L. 554, 559 (E. & A. 1898); Hires v. Atlantic City R.R. Co., 66 N.J.L. 30 (Sup. Ct. 1901); Danskin v. Penna. R.R. Co., 76 N.J.L. 660 (E. & A. 1909); Horandt v. Central Railroad Co., 78 N.J.L. 190 (Sup. Ct. 1909); Jones v. Pennsylvania R.R. Co., 78 N.J.L. 571 (E. & A. 1910); Kyle, Adm'x. v. Lehigh Valley R.R. Co., 81 N.J.L. 186 (Sup. Ct. 1911); Ross v. Director General, 94 N.J.L. 295 (Sup. Ct. 1920); State v. New York, S. & W.R.R. Co., 104 N.J.L. 226 (Sup. Ct. 1928), affirmed 105 N.J.L. 253 (E. & A. 1928); Tota v. Penna. R.R. Co., 104 N.J.L. 330 (E. & A. 1928).
At the Meadow Avenue railroad crossing the defendant chose for its convenience to locate its main line of tracks on top of an artificially constructed elevation of about ten feet in height on its right-of-way over which travellers on the avenue at that place are obliged to pass. In approaching the crossing from the east the surface grade of the avenue does not materially ascend until one reaches a point about 45 feet from the center of the railroad tracks, from which location to the ridge the degree of the ascent is about ten per centum. A photograph in evidence exhibits the condition.
On the dark night of March 15, 1951, when it was noticeable that for some reason the municipal street lights adjacent *212 to the east and west sides of the railroad right-of-way were not illuminated, the defendant's crew stationed a gondola freight car on the crossing directly obstructing the path of vehicles on the avenue. The insistence of the appellant is that the defendant's crew failed to provide any caution signal or safeguard whatever to forewarn motorists of the unusual stationary presence of the freight car at that location, hence the defendant had created an extra-hazardous situation and omitted to exercise greater care commensurate with the increased risk and danger.
Initially we recognize a significant distinction between an accident in which the motorist is struck at a crossing by a moving train and one in which the motorist collides with a stationary railroad car temporarily occupying the crossing. The distinction ordinarily necessitates a differentiation of the duties devolving upon the railroad company.
Except for the aforementioned physical characteristics of the crossing, this case would immediately draw our attention to the familiar decisions in Jacobson v. New York, S. & W.R.R. Co., 87 N.J.L. 378 (Sup. Ct. 1915); Nadasky v. Public Service Railroad Co., 97 N.J.L. 400 (Sup. Ct. 1922); Morris v. Atlantic City Railroad Co., 100 N.J.L. 328 (E. & A. 1924).
It is expedient to borrow the following quotation from the Jacobson case, supra:
"It is true the freight car was on the crossing, but the defendant had a right to have it there. The company had as much right to have it there for a short period of time as the plaintiff had a right to pass over the crossing. There was no evidence tending to show that the defendant negligently caused the freight car to obstruct the highway. The mere fact that it was on the crossing does not tend to show negligence. The defendant had a right, in the operation of its railroad, to have its cars pass over the crossing, and, incident to that right, it also had the right, in a reasonable and safe operation of the railroad, to stop its car for a reasonable length of time on the crossing. There was no evidence of unreasonable operation of the train. There was no evidence that it stood upon the crossing for an unreasonable period of time. On the contrary, the only legitimate inference from the evidence is that the stop was merely a momentary one. It cannot be said that it was the *213 duty of the defendant, whenever it stopped its train momentarily, to have had some one get off of the train for the purpose of warning persons that it had stopped. If it be conceded that the defendant's trainmen were chargeable with knowledge that automobiles were frequently driven over the crossing in the evening, it must also be conceded that the trainmen were justified in acting upon the assumption that an automobile would not be unnecessarily driven into the side of their train. The plaintiff's automobile was equipped with electric headlights of ordinary brilliancy, designed to enable the driver to avoid obstructions in the highway, and such lights were burning."
It is not made evident in the present case that the freight car was permitted to occupy the crossing for an unreasonable period of time.
Could it have been rationally resolved that the elevated position of the crossing, to the extent disclosed by the evidence, constituted an extraordinary danger which in this case had a proximate causal relationship to the collision? We think not. Significantly the plaintiff was exceedingly familiar with the crossing. He had traversed it numerous times since the year 1944. Indeed, he had previously passed over it four times on the day of the mishap.
His explanation is that had the approach to the crossing, which is straight, been also substantially horizontal, the presence of the freight car in front of him would have become observable at a greater distance from the crossing. The acknowledged fact is that traveling at a speed of perhaps less at that point than 25 miles an hour he saw with the aid of the headlights of his vehicle the object about 30 feet ahead of him and nevertheless forcibly collided with it. The evidence did not disclose the existence of a causal extra-hazardous condition within the compass of our pertinent adjudications.
It is our conclusion that the involuntary dismissal of the action was justifiable. The judgment is accordingly affirmed.